Bibianne U. Fell (SBN 234194)
Patrick C. Stormes-Swan (SBN 306526)
**GOMEZ TRIAL ATTORNEYS**
655 W. Broadway, Suite 1700
San Diego, CA 92101
Telephone:  (619) 237-3490
Facsimile:  (619) 237-3496

**Attorneys for Plaintiff Linda Sanchez**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Linda Sanchez, an individual, | Case No: **'18 CV1550 AJB AGS** |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES** |
| UNITED STATES OF AMERICA; and DOES 1 through 50, inclusive, | **Assigned to:** **Department:** |
| Defendants. | |

## JURISDICTION AND VENUE

1.     This action arises under the Federal Torts Claims Act.

2.     This Court has jurisdiction under 28 U.S.C. section 1346(b).

3.     For approximately three months, from around May 2017 to mid-July 2017, psychiatrist Leon Fajerman, M.D. ("Dr. Fajerman"), then 74-years-olds, committed acts of sexual harassment and contact against his patient, Linda Sanchez.  The series of events and/or omissions to act giving rise to this action occurred in San Diego County, CA.

4.     Dr. Fajerman had a history and practice of committing sexual acts against his patients at San Ysidro Health Center.  There are a number of other similar incidents

-1-

involving other female patients to date who were also sexually harassed and abused by Dr. Fajerman at San Ysidro Health Center.

5.     San Ysidro Health Center is a federally qualified health center and a Federal Torts Claims Act deemed facility.

6.     On information and belief, Dr. Fajerman was acting within the course and scope of his employment with San Ysidro Health Center and San Ysidro Health Administration when he committed acts of sexual harassment and contact against Plaintiff.

7.     On information and belief, federal officers, employees, and servants of the United States, while working in the course and scope of their employment, negligently hired, supervised, and retained Dr. Fajerman, and failed to warn others about his sexual advances and conduct with his psychiatric patients at San Ysidro Health Center.

8.     On information and belief, federal officers, employees, and servants of the United States, while working in the course and scope of their employment, dropped Plaintiff from care after Dr. Fajerman committed acts of sexual harassment and contact, and failed to provide for medication management leaving Plaintiff to go into withdrawal.

9.     Venue is proper in the United States District Court for the Southern District of California because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to this claim occurred in this district.  See 32 C.F.R. § 750.32(a).

**THE PARTIES**

10.     Plaintiff is a female adult residing in San Diego County, California.

11.     Plaintiff is informed and believes that at the time of the series of events or omissions giving rise to this action, Dr. Fajerman was employed by San Ysidro Health Center and San Ysidro Health Administration, and he resided in San Diego, California.

12.     Plaintiff is informed and believes that at the time of the series of events or omissions giving rise to this action, Defendant United States of America was a governmental entity organized under the Constitution of the United States.

13.     Plaintiff is informed and believes that Defendant United States of America is vicariously liable for the negligent acts of its employee Dr. Fajerman, who was acting

in the course and scope of his employment at all relevant times as an officer, employee, or servant of Defendant United States of America.

14.    Plaintiff is informed and believes that Defendant United States of America is liable for the negligent acts of its officers, employees, and servants who, while acting in the course and scope of their employment, negligently hired, supervised, and retained Dr. Fajerman, or who failed to warn Plaintiff and others about Dr. Fajerman's sexual advances and conduct with his psychiatric patients at San Ysidro Health Center.

15.    Plaintiff is informed and believes that Defendant United States of America is liable for the negligent acts of its officers, employees, and servants who, while acting in the course and scope of their employment, dropped Plaintiff from appropriate care after Dr. Fajerman committed acts of sexual harassment and contact, and failed to provide for medication management leaving Plaintiff to go into withdrawal.

## PROCEDURAL ALLEGATIONS

16.    On or around November 6, 2017, Plaintiff served on Defendant United States of America a written claim for damage, injury, or death under the FTCA.

17.    On or around April 2, 2018, the Department of Health & Human Services denied Plaintiff's written claim for damage, injury, or death under the FTCA.

18.    Under 28 U.S.C § 2675(a), Plaintiff now files this action.

## GENERAL ALLEGATIONS

19.    On or around December 16, 2016, Plaintiff presented to Dr. Fajerman for the first time for a psychiatric appointment at a San Ysidro Health Center ("SYHC") facility in Chula Vista, CA.

20.    On or around January 31, 2017, Plaintiff presented to Dr. Fajerman for a second psychiatric appointment at a SYHC facility in Chula Vista.

21.    On or around March 31, 2017, Plaintiff presented to Dr. Fajerman for a third psychiatric appointment at a SYHC facility in Chula Vista.  When Plaintiff entered the appointment room, Dr. Fajerman commented on how "inviting" she looked.  Plaintiff asked Dr. Fajerman what he meant by his comment.  Dr. Fajerman replied that Plaintiff

1  looked inviting to men.  Plaintiff asked for further clarification, at which point Dr. Fajer-
2  man changed the subject of discussion.

3       22.     At or near the end of Plaintiff's psychiatric appointment with Dr. Fajerman
4  on or around March 31, 2017, Plaintiff began to cry.  Dr. Fajerman approached Plaintiff
5  in session and embraced her.  While embracing Plaintiff, Dr. Fajerman pushed his chest
6  against her chest, causing her to feel uncomfortable.  Plaintiff told Dr. Fajerman that she
7  was okay, at which point Dr. Fajerman let her go.  Plaintiff then left the appointment.

8       23.     On or around May 12, 2017, Plaintiff presented to Dr. Fajerman for a fourth
9  psychiatric appointment at a SYHC facility in Chula Vista.  At or near the end of the
10  appointment, Plaintiff stood up to leave.  Dr. Fajerman stood up and met Plaintiff face-to-
11  face before she could exit the room.  Dr. Fajerman pushed Plaintiff against a wall of the
12  room and forcibly kissed her on the mouth and groped one of her breasts with his hand.
13  Plaintiff asked Dr. Fajerman why he was doing this to which he responded, "when you
14  like something, you go for it."  Plaintiff was in shock and did not know what to do.
15  Plaintiff told Dr. Fajerman that someone would see them through a window of the room.
16  Dr. Fajerman responded to Plaintiff that he had another office nearby the SYHC facility.
17  Dr. Fajerman asked Plaintiff to meet him there later that day where they could talk further
18  and "continue this."  Plaintiff left the room and did not meet Dr. Fajerman later that day.

19       24.     On or around June 9, 2017, Plaintiff presented to Dr. Fajerman for a fifth
20  psychiatric appointment at a SYHC facility in Chula Vista.  During this appointment, it
21  appeared to Plaintiff that Dr. Fajerman was groping or otherwise touching himself in or
22  around his groin area.  At or near the end of the appointment, Dr. Fajerman stood up from
23  his seat.  Plaintiff believed this meant her appointment was over, so she stood up as well.
24  Dr. Fajerman approached Plaintiff, embraced her, and began to forcibly kiss her on the
25  mouth.  Dr. Fajerman then pushed Plaintiff back into one of the corners of the room and
26  continued to forcibly kiss her.  Dr. Fajerman pressed his body against her body and then
27  groped one of her breasts.  Dr. Fajerman reached under Plaintiff's blouse with one of his
28  hands but Plaintiff pushed his hand down before it could reach beyond her stomach area.

-4-

Dr. Fajerman asked Plaintiff if she could meet him later at his "private office."  Plaintiff said "yes" so that Dr. Fajerman would stop.  Dr. Fajerman let Plaintiff go, and explained to her where his private office was located.  Plaintiff left the appointment and did not meet Dr. Fajerman at his private office later that day.

25.     The next day, on or around June 10, 2018, Plaintiff arrived at her residence after dropping off her child at school.  Plaintiff observed a car pull up to her residence. The driver rolled down the window and Plaintiff recognized the driver as Dr. Fajerman. Plaintiff was shocked and fearful upon seeing this and asked Dr. Fajerman what he was doing there.  Dr. Fajerman replied that he thought they were going to his private office. Plaintiff replied that there was no way she could go to his private office.  Dr. Fajerman became upset and sped off.

26.     Over the next weeks following the encounter on or around June 10, 2017, Dr. Fajerman called Plaintiff multiple times.  Among other things, Dr. Fajerman asked about or tried to coordinate a private meeting with Plaintiff during those phone calls.

27.     Throughout the months leading up to an including mid-July 2017, Plaintiff had been experiencing significant emotional distress due to a close family member's medical issues.  Plaintiff's family member ultimately died from these issues.

28.     During one of the aforementioned phone calls with Dr. Fajerman, Plaintiff agreed to meet Dr. Fajerman at his private office in the hope that he could prescribe her certain medications to help her cope with her significant emotional distress.

29.     On the day of the meeting, in or around mid-July 2017, Plaintiff began to feel uneasy about the situation and contacted Dr. Fajerman to tell him that she was having an issue with her car.  Dr. Fajerman offered to pick up Plaintiff at her residence, which he proceeded to do.  Dr. Fajerman drove Plaintiff to a brown office building in Chula Vista, where he proceeded to take her to take her to a private office located on the second floor.

30.     Once they reached and entered the private office, Dr. Fajerman grabbed Plaintiff's arm and pushed her onto a couch.  Dr. Fajerman got on top of Plaintiff and kissed her and groped her breasts and genitalia over her clothes.

31.     Plaintiff felt Dr. Fajerman's erect penis pressed up against her body.

32.     Plaintiff was petrified.  She managed to get up from beneath Dr. Fajerman and off the couch in the office.  She told Dr. Fajerman that she was hypoglycemic and that she would faint if she did not eat soon.  Dr. Fajerman said that they could leave only if Plaintiff "showed him something."  Plaintiff turned away from him and briefly pulled down her pants and showed him her buttocks.  Dr. Fajerman lunged at her, but Plaintiff went to the door and opened it.  Dr. Fajerman told Plaintiff, in Spanish, that he was going to give her a kiss.  Plaintiff responded that he had to take her to eat something soon as she felt very ill.

33.     Dr. Fajerman agreed to drive Plaintiff to a nearby restaurant to eat.  After a meal, Dr. Fajerman began to drive Plaintiff back to his private office.  Plaintiff felt very frightened and told Dr. Fajerman that she could not go back because she had to pick up her child from school.  Dr. Fajerman became upset, drove Plaintiff back to her residence, and sped off.

34.     At no point during Plaintiff's treatment or interactions with Dr. Fajerman was Plaintiff informed by Dr. Fajerman or SYHC that his medical license was being reviewed for suspension by the Medical Board for similar inappropriate conduct against another patient, or that it was in fact suspended by the Medical Board for such conduct.

35.     After Plaintiff's encounter with Dr. Fajerman in mid-July 2017, Plaintiff learned there were a number of other patients who were sexually harassed and assaulted by Dr. Fajerman at or around the same time period, or before her visits with him for a year period, in the similar or same manner she was harassed and assaulted by him.

36.     After Plaintiff's encounter with Dr. Fajerman in mid-July 2017, and after Dr. Fajerman's medical license was suspended by the Medical Board, SYHC cancelled Plaintiff's outstanding appointments with Dr. Fajerman and scheduled Plaintiff to see a nurse practitioner.  The nurse cut the medication "Clonazepam" Plaintiff had been on for seven years by two-thirds without any taper.  Plaintiff went into withdraws as a result, and SYHC did not timely schedule an appointment for Plaintiff with a psychiatrist.

37.     Plaintiff has also been dropped from care multiple times from SYHC following her treatment with Dr. Fajerman.  SYHC sent letters to Plaintiff advising that it is discontinuing care without explanation.  When Plaintiff went to schedule appointments with another provider, there was a six-month waiting period to be seen by a psychiatrist. These drops in care from SYHC and delay in obtaining healthcare treatment resulted in her not receiving appropriate medical care or mental healthcare treatment.

38.     Further, for Plaintiff to ultimately receive healthcare services at SYHC, SYHC required Plaintiff to see mental health providers in the same office in which she was assaulted.  This caused Plaintiff to suffer further and continued emotional distress.

39.     After a series of complaints to the Medical Board, Dr. Fajerman surrendered his medical license in May 2018 due to this series of sexual abuses of patients.  He is now being prosecuted for his sexual acts of contact against patients in his care.

### FIRST COUNT: Negligence

**(Against Defendant United States of America and DOES 1-50, Inclusive)**

40.     Plaintiff  re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-39 above.

41.     As a health care practitioner, Dr. Fajerman held himself out as a skilled, qualified, able, experienced, and knowledgeable professional with good judgment in the area of psychiatric treatment.  Plaintiff  relied on Dr. Fajerman's representations of skill, qualifications, abilities, judgment, and knowledge of psychiatric care.  SYHC and San Ysidro Health Administration made similar representations as to Dr. Fajerman's skill, qualifications, experiences, and knowledge to patients.

42.     From and after the time of employment, Dr. Fajerman negligently failed to exercise the proper degree of knowledge and skill (including in examining, diagnosing, monitoring, ordering testing, treating, prescribing, warning, treating, and caring) and qualification, ability, experience, and judgment ordinarily possessed and exercised by other health care providers and other health facilities and clinics, and the like, engaged in the same profession or similar locality as Dr. Fajerman.

43.     Dr. Fajerman failed to exercise the proper degree of knowledge and skill because he negligently, carelessly, recklessly, and unlawfully treated, provided care, monitored, and/or examined Plaintiff, and ultimately failed to adequately treat and properly protect Plaintiff by and through his aforementioned conduct.  This negligence includes, but is not limited to, engaging in inappropriate conversations, inappropriate physical contact, inappropriate interactions outside the office setting (including but not limited to driving to Plaintiff's home, picking up Plaintiff from her home, taking Plaintiff out to eat, taking Plaintiff to his private office, and calling Plaintiff on the telephone), and making sexual advances to Plaintiff.

44.     Further, Dr. Fajerman failed to advise Plaintiff that his medical license was being reviewed for suspension of similar inappropriate conduct as to another patient, and failed to advise Plaintiff that his license was in fact suspended for such conduct.  He also failed to ensure that Plaintiff continue to get necessary mental healthcare treatment and medication management when she stopped coming to him for treatment.

45.     Dr. Fajerman's negligence in administering Plaintiff's medical care and mental healthcare treatment directly and proximately caused Plaintiff to suffer injuries and serious emotional distress.  It was a substantial factor in causing Plaintiff's harm.

46.     Dr. Fajerman was acting in the course and scope of his employment with San Ysidro Health Center and San Ysidro Health Administration when he performed his negligent acts or omissions.

47.     Officials, employees, and servants at SYHC and San Ysidro Health Administration, while working in the course and scope of their employment, negligently hired, supervised, and retained Dr. Fajerman as a psychiatrist at SYCH and San Ysidro Health Administration.  SYHC knew or should have known about Dr. Fajerman's history and practice of sexual contact (or attempted sexual contact) with patients in his case, and that he should not have been hired or retained.

48.     Further, officials, employees, and servants at SYHC and San Ysidro Health Administration, while working in the course and scope of their employment, also failed

to warn others about Dr. Fajerman's sexual advances and conduct with his psychiatric patients at SYHC. This negligence includes, but is not limited to, SYHC continuing to schedule appointments for Dr. Fajerman to see Plaintiff despite knowing or having reason to know that he posed a danger to his clients, SYHC failing to promptly advise Plaintiff when it became aware Dr. Fajerman's license was suspended and for what conduct his licensed was suspended, and SYHC failing to follow-up with Plaintiff and ascertain if she was a victim and additional medical care and mental healthcare support that was needed.

49.   As a result of such negligent acts and omissions to act, Plaintiff did not receive prompt intervention, continued treatment, or appropriate care. This led to her experiencing withdraws and be dropped from care. Further, SYHC ultimately required that Plaintiff see mental health providers in the same SYHC office in which she was assaulted. This caused her to suffer additional and repeated emotional distress.

50.   Dr. Fajerman had a history of sexual harassment and contact with his psychiatric patients, yet he was hired and able to retain his employment at San Ysidro Health Center and San Ysidro Health Administration, and his patients were not warned about his inappropriate sexual behavior.

51.   Had officials, employees, and servants at San Ysidro Health Center and San Ysidro Health Administration performed their functions and reviewed Dr. Fajerman's degree of knowledge, skill, qualification, ability, experience, and judgment, they would have recognized his unfitness to serve as a medical professional at San Ysidro Health Center and San Ysidro Health Administration and suspended or terminated his employment and warned patients about his improper conduct.

52.   The acts and omissions comprising the negligent hiring, supervision, and retention claims are not based upon the exercise or performance of failure to exercise or perform a discretionary function of the United States government.

53.   These negligent acts and omissions directly and proximately caused Plaintiff to suffer economic and non-economic harm.  These negligent acts and omissions were a substantial factor in causing Plaintiff's harm.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.      For special and general damages, in an amount to be proven at trial.

2.      For interest as permitted by law.

3.      For cost of suit.

4.      For such other and further relief as the Court deems proper.

The paragraphs of this complaint alleged on information and belief are 1-53.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial for all triable claims.

DATED:  July 5, 2018                              **GOMEZ TRIAL ATTORNEYS**

_____
Bibianne U. Fell
Patrick C. Stormes-Swan

**Attorneys for Plaintiff**