# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Linda Sanchez,<br><br>                      Plaintiff,<br><br>v.<br><br>United States of America; DOES 1 through 50, inclusive,<br><br>                      Defendants. | Case No.: 18-cv-1550-AJB-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (Doc. No. 4)** |

Defendant United States of America moves to dismiss Plaintiff Linda Sanchez's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Doc. No. 4 at 1.) For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (Doc. No. 4.) The Court **DISMISSES** any alleged acts prior to Dr. Fajerman becoming an eligible employee, any acts conducted off of federally funded property, and Sanchez's failure to warn claim.

## I. BACKGROUND

Sanchez brings this complaint under the Federal Torts Claim Act ("FTCA"). (Doc. No. 1 ¶ 1.) Sanchez alleges her psychiatrist, Leon Fajerman, "committed acts of sexual harassment and contact against" Sanchez for three months—from "May 2017 to mid-July 2017." (*Id.* ¶ 3.) The events alleged took place at San Ysidro Health Center ("SYHC"), where Sanchez claims Dr. Fajerman has a "history and practice of committing

sexual acts against his patients." (*Id.* ¶ 4.) Sanchez details several incidents in which Dr. Fajerman acted inappropriately, including groping her, showing up at her home, and pushing her onto his couch while groping her, kissing her, and pressing his genitalia against her. (*Id.* ¶¶ 19–31.) Sanchez states, unbeknownst to her, Dr. Fajerman was being investigated for similar conduct by the Medical Board, resulting in his license being suspended. (*Id.* ¶¶ 34–36.) As a result, Sanchez's future appointments with Dr. Fajerman were cancelled and a nurse practitioner "cut" her medication "by two-thirds without any taper" causing her to go into "withdraws." (*Id.* ¶ 36.) Finally, Sanchez claims SYHC dropped her from care several times without explanation which caused delays in her medical treatment. (*Id.* ¶ 37.)

## II. LEGAL STANDARDS

### 1. Motion to Dismiss

Under Federal Rule of Civil Procedure Rule 12(b)(1), a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### 2. Federal Tort Claims Act

As a general principle, the United States "may not be sued without its consent. . . ."

*United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA, however, is an example of the federal government consent to be sued for certain types of actions. The FTCA provides that the United States may be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b). The FTCA provides the exclusive remedy for tort lawsuits against the United States and allows the United States to be held liable to the same extent as a private employer under state law. 28 U.S.C. § 2679. California law governs this FTCA case. 28 U.S.C. §§ 1346(b)(1), 2674.

The Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233, extends the application of the FTCA to certain public health entities, their employees, and qualified contractors receiving federal grants under 42 U.S.C. § 254(b). The entities typically covered by the FSHCAA are community health centers that receive federal grants to serve underprivileged populations regardless of their ability to pay for service. H.R. Rep. No. 104-398 at 5 (1995).

### III. DISCUSSION

Defendant argues the Court must dismiss the following claims: (1) sexual misconduct by Dr. Fajerman, except for claims between April 1, 2017, and June 9, 2017; (2) failure to advise Sanchez that Dr. Fajerman's license was being suspended; (3) negligent hiring, retention, and supervision of Dr. Fajerman; and (4) Failure to warn.

The Court notes that Plaintiff conceded during oral argument to limiting the scope of the acts to those located at SYHC and not at her home or Dr. Fajerman's office. Thus, the Court **DISMISSES** any claims pertaining to those locations. (*See* Doc. No. 1 ¶¶ 25, 29, 30–33.)

### A. Covered contractor under the Federally Supported Health Centers Assistance Acts

Although Sanchez does not specifically mention the FSHCAA, it allows a limited waiver of sovereign immunity by providing the exclusive remedy under the FTCA for

3

18-cv-1550-AJB-AGS

damages resulting from medical negligence associated with eligible health centers. 422 U.S.C. § 233(a), (g). Employees of these health centers are "deemed to be [] employee[s] of the Public Health Service." *Id.* § (g)(1)(A). Here, Defendant alleges Dr. Fajerman is not an employee, but a contractor. (Doc. No. 4-1 at 10.) Contractors can still qualify under the FSHCAA as a covered individual "only if—"

> (A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or
>
> (B) in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

*Id.* § 233(g)(5)(A)–(B).

Defendant argues Dr. Fajerman does not meet either option.[1] First, Defendant states "Dr. Fajerman worked on average less than 32 ½ hours per week." (Doc. No. 4-1 at 11.) As evidence, Defendant provided a declaration from the Director of Contracts at SYHC which states Dr. Fajerman's contract provided he would work 30 to 40 hours per week. (Douglas Israel Decl., Doc. No. 4-3 ¶ 5.) An amendment to Dr. Fajerman's agreement states he "shall provide up to forty (40) hours of Service per week." (Doc. No. 4-3 at 10.) Another declaration provided by the Chief Financial Officer details Dr. Fajerman's billing forms, which provide the total hours worked each month. (Gilbert Fimbres Decl., Doc. No. 4-4 ¶¶ 1–20.) An excel spreadsheet provided summarizing all of Dr. Fajerman's billing forms shows that in his first 12-month term, Dr. Fajerman averaged over 32 ½ hours a week for only five months, from November 2016 to March 2017. (Doc. No. 4-6 at 11.) The spreadsheet also shows Dr. Fajerman averaged over 32 ½ hours a month during his renewed term for three out of four months, from April 2017 to July 2017. (*Id.*)

---

[1] Sanchez does not dispute Defendants' argument that the second option, § 233(g)(5)(B), does not apply because Dr. Fajerman's field of practice is not one listed in the statute. Thus, the Court declines to analyze it, finding it is indeed inapplicable.

4

In her response, Sanchez agrees the time period should be limited to Dr. Fajerman's renewed term and concedes he did not become a covered contractor until March 31, 2017. (Doc. No. 6 at 9.) Defendant argues because of the United States' sovereign immunity during Dr. Fajerman's initial term, "the Court must dismiss" any alleged acts which occurred "between April 1, 2016, and March 31, 2017." (Doc. No. 4-1 at 11–12.) However, the incidents alleged in Sanchez's complaint do not include incidents in that time frame, save her first appointment with the doctor on March 31, 2017. (*See* Doc. No. 1 ¶¶ 20–33.) Thus, the Court finds Sanchez has shown that Dr. Fajerman was an eligible employee during his renewed term from April 2017 to July 2017. Because the parties agree any acts before then are not covered, the Court **GRANTS** Defendant's motion to dismiss any such claims.

### B. SYHC's Failure to Warn Sanchez

Defendant moves to dismiss Sanchez's failure to warn claim stating that the United States retains its sovereign immunity for misrepresentation claims and cites to the "misrepresentation exception." (Doc. No. 4-1 at 13–14.) Several classes of tort claims are excepted from the FTCA's broad waiver. *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984). Among these is the "misrepresentation exception," which bars damage claims "arising out of . . . misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). Courts have interpreted this exception to bar claims arising from commercial decisions based on false or inadequate information provided by the government. *Guild v. United States*, 685 F.2d 324, 325 (9th Cir. 1982).

Sanchez again concedes to limit his claims so long as they "concern[] vicarious liability, rather than direct liability." (Doc. No. 6 at 10.) Sanchez further acknowledges that "[t]he law in the Ninth Circuit at this time appears to classify failure to warn claims falling under the misrepresentation exception to the FTCA." (Doc. No. 6 at 10.) Thus, the Court **GRANTS** Defendant's motion to dismiss Sanchez's failure to warn claim.

### C. SYHC's Negligent Hiring, Supervision, and Retention of Dr. Fajerman

Next, Defendant alleges Sanchez's negligent hiring, supervision, and retention

claims "[do] not fall with[in] the scope of the FSHCAA's waiver of sovereign immunity." (Doc. No. 4-1 at 15.) This is because "[s]uch allegations are of an administrative/human resources/employment nature. They are clearly not the performance of medical, surgical, or dental functions. . . ." (*Id.*) Defendant continues to argue, "[n]either are such alleged acts 'related functions' under the same statute and regulation." (*Id.*) Sanchez retorts that the "negligent hiring, supervision, and retention are 'related functions' to the provision of medical services." (Doc. No. 6 at 10.)

Two cases help guide the Court's analysis. Most poignantly, in a similar case as the instant one, the Court held that a plaintiff's "negligent hiring and retention claim is a 'related function' to the provision of medical services under the facts as alleged, and therefore the claim is covered under Section 233(a)." *Brignac v. United States*, 239 F. Supp. 3d 1367, 1377 (N.D. Ga. 2017). There, Brignac visited a health center for medical treatment and during an examination, the doctor told Brignac to take his clothes off, grabbed his penis, and placed it in his mouth without Brignac's consent. *Id.* at 1370. The doctor in question had a history of sexually assaulting patients. *Id.* at 1371.

The Court reasoned the claim was covered because a health center's or hospital's "obligations under Section 233(h) for vetting its physicians are 'inextricably woven into [its] performance of medical functions.'" *Id.* (quoting *Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001)). The Court also noted the importance that all the events in plaintiff's case were related to the doctor's treatment of plaintiff since "[p]laintiff was sexually assaulted by [the doctor] during the course of his medical examination." *Id.* at 1377–78. The Court distinguished its case from another case which held section 233(a) did not apply to plaintiff's negligent hiring, retention, and supervision claim because "the physician's harm to the patient—which allegedly gave rise to the negligent hiring, supervision, and retention claim against the health center—had nothing to do with the provision of medical services." *Id.* at 1378 (citing *La Casa de Buena Salud v. United States*, No. CIV 07-238 JB/RHS, 2008 WL 2323495, at *20 (D.N.M. Mar. 21, 2008)).

In that case, Laura McNaughton saw her dentist, James Smith, for a dental

examination at La Casa's dental clinic. *La Casa*, 2008 WL 2323494, at *1. There is a dispute as to whether Smith saw McNaughton again after that, but nevertheless, more than six months after that appointment, Smith sexually assaulted and murdered McNaughton. *Id.* at *2. Her estate brought claims of negligent hiring, supervision, and retention of Smith against La Casa. *Id.* at *2. La Casa sought immunity, and while the Court ultimately agreed in this case La Casa was immune from suit, the Court recognized that FSHCAA coverage under Section 233(a) could potentially extend to such claims. *Id.* at *18–20. The Court explained that "[w]hile negligent hiring, supervision, and retention of medical staff may sometimes be related to the provision of medical services, and thus medical malpractice, here there is no allegation that the [decedent's death was] in any way related to the provision of medical treatment or medical care." *Id.* at *18. The court reasoned that if the "events giving rise to the action" are related to the provision of medical services, then a claim could be covered under § 233(a). *Id.*

In this case, Dr. Fajerman's actions are more analogous to the *Brignac* case than *La Casa*. Sanchez has pled that there is a history of Dr. Fajerman sexually assaulting patients. Sanchez has also pleaded that the hospital's continued vetting of its doctors when it enters into agreements with them, and when it renews agreements with them, is inextricably woven into its performance of medical functions. Further, the events Sanchez suffered at the hands of Dr. Fajerman were similarly related to his treatment of her at the hospital as the doctor in *Brignac*. The facts of Sanchez's case are easily distinguishable from *La Casa* because there was significantly more interaction between Sanchez and Dr. Fajerman arising out of his duty with the hospital than there was in the one or two dental interactions leading to a completely unrelated murder.

The Court takes note of Defendant's strong belief that *Brignac* was wrongly decided. Defendant argued *Brignac* failed to do any statutory interpretation of the ambiguous word "related," and that any ambiguity regarding whether the United States waived immunity must be resolved in favor of the government. However, the Court's in-depth analysis in *La Casa* both answers Defendant's concern regarding the lack of analysis in *Brignac* and

supports the Court's conclusion here. *La Casa* determined that because "McNaughton's death did not result from the performance of dental functions by Smith for the benefit of La Casa." *La Casa*, 2008 WL 2323494, at *18. Thus, the Court found there could be "no coverage under the FTCA for La Casa or its employees under the 'related functions' analysis." *Id.* Here, again, Dr. Fajerman's actions were related to his treatment of Sanchez and appears—at least at the motion to dismiss state—to have arisen from his employment. Thus, the Court finds that Sanchez has shown a basis for jurisdiction in her negligent hiring, supervision, and retention claim and Defendant's request to dismiss this claim is **DENIED**.

## IV. CONCLUSION

For the reasons stated herein, the Court: (1) **GRANTS** Defendant's request to limit the time frame in which the Court can consider Dr. Fajerman's acts because Sanchez does not allege any acts prior to when Dr. Fajerman became an eligible person; (2) **GRANTS** Defendant's request to dismiss Sanchez's allegations regarding Dr. Fajerman's conduct at her home or in his private office; (3) **GRANTS** Defendant's request to dismiss Sanchez's failure to warn theory as Sanchez concedes—at least to some extent—that the United States retains sovereign immunity over this claim; and (4) **DENIES** Defendant's request to dismiss Sanchez's negligent hiring, supervision, and retention claim. (Doc. No. 5.)

**IT IS SO ORDERED.**

Dated: August 9, 2019

Hon. Anthony J. Battaglia
United States District Judge

8

18-cv-1550-AJB-AGS