UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA SANCHEZ,<br><br>                           Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, and DOES 1 through 50,<br><br>                          Defendants. | Case No.: 18-cv-1550-AJB-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO DISMISS, (Doc. No. 13)**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT, (Doc. No. 19)** |

Defendant United States of America ("United States") moves to dismiss with prejudice Plaintiff Linda Sanchez's ("Sanchez") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (*See* Doc. No. 13.) Sanchez filed an opposition to the United States' motion to dismiss. (*See* Doc. No. 15.) In addition, Sanchez requested leave to amend the complaint, or in the alternative, Sanchez asked for continuance of the motion and leave to conduct discovery into SYHC's rules, policies, and procedures. (Doc. Nos. 15, 19.) The United States filed an opposition in part to Sanchez's motion for leave to amend the complaint. (*See* Doc. Nos. 16, 20.) Pursuant to Civil Local Rule 7.d.1, the Court finds the matter suitable for determination on the papers and without oral argument. For the reasons discussed herein, the Court **GRANTS** the United States' motion to dismiss, and **GRANTS** Sanchez's motion for leave to amend her complaint.

//

1

## I. BACKGROUND

Sanchez brings this complaint under the Federal Torts Claim Act ("FTCA"). (Complaint ("Compl."), Doc. No. 1 ¶ 1.) Sanchez alleges her psychiatrist, Leon Fajerman, "committed acts of sexual harassment and contact against" Sanchez for three months—from "May 2017 to mid-July 2017." (*Id.* ¶ 3.) The alleged events took place at San Ysidro Health Center ("SYHC"), a federally qualified health center, where Sanchez claims Dr. Fajerman has a "history and practice of committing sexual acts against his patients." (*Id.* ¶ 4.) Sanchez details several incidents in which Dr. Fajerman acted inappropriately, including groping her, showing up at her home, and pushing her onto his couch while groping her, kissing her, and pressing his genitalia against her. (*Id.* ¶¶ 19–31.) Sanchez states, unbeknownst to her, Dr. Fajerman was being investigated for similar conduct by the Medical Board, resulting in his license being suspended. (*Id.* ¶¶ 34–36.) As a result, Sanchez's future appointments with Dr. Fajerman were cancelled and a nurse practitioner "cut" her medication "by two-thirds without any taper" causing her to go into "withdraws." (*Id.* ¶ 36.) Finally, Sanchez claims SYHC dropped her from care several times without explanation which caused delays in her medical treatment. (*Id.* ¶ 37.)

## II. PROCEDURAL HISTORY

On July 6, 2018, Sanchez filed her complaint against the United States, alleging claims for negligent hiring and supervision under the Federal Torts Claims Act. (Compl. ¶¶ 40–53.) On August 21, 2019, the United States filed a motion to dismiss for lack of subject matter jurisdiction pursuant to the discretionary function exception. (Doc. No. 13.) Sanchez opposed the motion, and the United States replied. (Doc. Nos. 15–16.) Then on January 30, 2020, Sanchez filed a motion for leave to amend the complaint. (Doc. No. 19.) The United States opposed in part, and Sanchez replied. (Doc. Nos. 20, 23–24.) This order follows.

//
//
//

## III. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court assumes plaintiff's "[factual] allegations to be true and draw[s] all reasonable inferences in [her] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Where the party asserts a factual challenge, the Court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.* The United States argues Sanchez's complaint fails to state a claim that is facially outside of the discretionary function exception to the FTCA. (Doc. No. 13 at 2.) Thus, the Court considers the allegations in the complaint and draws all reasonable inferences in favor of Sanchez.

### B. Motion for Leave to Amend the Complaint

Rule 15(a) governs leave to amend prior to trial. A party may amend its pleading once as a matter of course within 21 days after serving it; or, if the pleading is one requiring a response, within 21 days after service of the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The grant or denial of leave to amend is in the Court's discretion. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy in favor of granting leave to amend is applied with extreme liberality. *See Foman v. Davis*, 371 U.S. 178, 181–82 (1962).

## IV. DISCUSSION

While the United States' motion to dismiss was fully briefed and pending, Sanchez filed a motion for leave to amend the complaint. (Doc. No. 19.) The United States opposed, in part, Sanchez's motion for leave to amend, arguing that although it did not necessarily oppose Sanchez's amendments, it opposed allowing the amendments to render moot its previously filed motion to dismiss. (Doc. No. 20.) After review of the parties' arguments, and with consideration for judicial economy, the Court agrees with the United States and finds it appropriate to address the United States' pending motion to dismiss. Thus, the Court will first begin with the United States' motion to dismiss, and will then turn to Sanchez's motion for leave to amend.

**A. The United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

    **1. Discretionary Function Exception**

Where suit is brought against the United States, federal courts have no jurisdiction absent the United States' consent to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Certain federal statutes provide limited exceptions to this general rule. For example, the FTCA grants the federal district courts exclusive jurisdiction over civil actions against the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 1346(b)(1).

However, FTCA's broad waiver of sovereign immunity is limited by discretionary function exception. This exception precludes claims against the United States which are "based upon the exercise or performance or the failure to exercise or perform a

4

discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In order to determine whether the discretionary function exception applies, a court must engage in a two-step inquiry: (1) the court must determine whether the challenged conduct involves an element of judgment or choice, *see Berkovitz v. United States*, 486 U.S. 531, 536 (1988); and (2) if the conduct involves some element of choice, the court must determine whether the conduct implements social, economic, or political policy considerations, *see Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994). Plaintiffs are required to advance a claim that is facially outside the discretionary function exception in order to defeat a motion to dismiss. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

In the instant motion, the United States argues the first step of the test is satisfied because Sanchez fails to identify a federal statute, regulation, or policy that required specific course of action by SYHC to respond to allegations against Dr. Fajerman. (Doc. No. 13 at 7.) Furthermore, the United States contends, the second step is satisfied because the SYHC's hiring, supervision, and retention of Dr. Fajerman involved an element of choice based on social, economic, or political policy considerations. (*Id.* at 8.) Therefore, the United States asserts the "discretionary function" exception bars Sanchez's lawsuit.

In her Opposition, Sanchez does not dispute the first prong and concedes the discretionary function exception generally applies to employment decisions.[1] (Doc. No. 15 at 8.) But Sanchez disputes the second prong, arguing the "discretionary function" exception should not apply "where Government fails to act after receiving notice of illegal behavior." (*Id.* at 5.) The crux of Sanchez's argument is that "no policy could possibly support [United States'] failure to respond to notice of illegal conduct." *Id*. In her complaint, Sanchez alleges "SYHC continu[ed] to schedule appointments for Dr. Fajerman to see [Sanchez] despite knowing or having reason to know that he posed a danger to his

---

[1] However, in her motion for leave to amend, Sanchez states she now has sufficient facts to mount an attack on the first prong of the discretionary function exception. (Doc. No. 19-1 at 13.)

5

clients." (Compl. ¶ 48.) Thus, Sanchez contends the discretionary function exception is inapplicable because there is no plausible policy consideration that could support the United States' failure to act.

With regard to the second prong of the discretionary function exception analysis, generally, the decisions relating to the hiring, supervision, and retention of employees involve policy judgments of the type Congress intended the discretionary function exception to shield. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.2000) (holding negligent employment, supervision and training claims "fall squarely within the discretionary function exception"); *see also Gourgue v. United States*, No. 12CV-1490-LAB, 2013 WL 1797099, at *2 (S.D. Cal. Apr. 29, 2013) ("[T]he Government's decision of how to train and supervise its employees is the kind of decision that the discretionary function was designed to protect because it is susceptible to a policy analysis."). The challenged action "need not be actually grounded in policy considerations," it simply needs to be, "by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998).

Sanchez argues this Court should follow the reasoning in *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995). There, the court recognized that issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception. *Id*. 496. However, the court held that where the United States is put on notice of illegal conduct, the choice no longer involves plausible policy considerations. *Id*. However, this Court is not bound by the Eight Circuit decision when the Ninth Circuit has applied the discretionary function exception in similar circumstances, and reached a contrary conclusion. In addition, the facts in *Tonelli* are distinguishable from the facts present in this case. Here, Sanchez merely alleges "SYHC knew or should have known about Dr. Fajerman's history and practice of sexual contact (or attempted sexual contact) with patients." (Compl. ¶ 36.) In contrast, the plaintiffs in *Tonelli* alleged the United States had actual and detailed notice of an employee's ongoing illegal conduct and failed to act to the plaintiffs' own complaint. *Tonelli*, 60 F.3d at 494–

6

95. As currently pled, there is neither an indication that the United States failed to act in response to Sanchez's complaints nor are there facts pled as to the specifics of the notice the United States allegedly had.

This case is more analogous to *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009). There, the plaintiff claimed the Church negligently supervised and retained a priest whom it knew or should have known that "had a history of sexually abusing children." *Id.* at 1083. The court held the plaintiff's causes of action for negligent hiring and supervision, and failure to warn are barred by the discretionary function exception. *Id*. at 1085. The court reasoned that some of the policy considerations affecting the Church's decision could have been the harm to its reputation, the effect of pastoral stability on parishioners' well-being, and staffing shortages. *Id*. Thus, the court concluded the Church's decision was susceptible to policy considerations. *Id*.

Similarly, here, Sanchez alleges "SYHC knew or should have known about Dr. Fajerman's history and practice of sexual contact (or attempted sexual contact) with patients," and "he should not have been hired or retained." (Compl. ¶¶ 47, 50.) In Opposition, Sanchez asserts *Holy See* is not applicable here because it involved decision regarding notice of ***prior*** illegal conduct while in *Tonelli,* the United States had a notice of ***ongoing*** illegal conduct. (Doc. No. 15 at 9.) However, for the purposes of the second prong of the two-step test, the decision need not actually be based on policy considerations. Rather, this prong is met when the decision is simply susceptible to policy considerations. Assuming, arguendo, SYHC had notice of ongoing illegal conduct, the decision regarding the retention and supervision of Dr. Fajerman is still susceptible to policy considerations.

In the case of Dr. Fajerman, SYHC might have decided to retain him to avoid unnecessarily alarming other patients while investigation was ongoing, or SYHC might have tried to balance insuring public safety and providing fairness to the accused. Furthermore, the complaint alleged that "after Dr. Fajerman's medical license was suspended by the Medical Board, SYHC cancelled Sanchez's outstanding appointments." (Compl. ¶ 36.) At this point, the retention of Dr. Fajerman no longer involved any policy

7

considerations. In contrast, SYHC's decision to retain and supervise an employee while the employee's license was being reviewed for suspension included policy considerations such as fairness to the accused and public safety. These types of social, economic, or political policy considerations could have influenced SYHC's decision to hire, supervise or retain Dr. Fajerman. This is the kind of judgment the discretionary function exception was designed to shield. Therefore, the second prong of the two-step inquiry is met, and Sanchez's complaint as pled is barred by the discretionary function exception. As such, the United States' motion to dismiss is **GRANTED.**

B. <u>Sanchez's Motion for Leave to Amend</u>

Having addressed the United States' motion, the Court now turns to Sanchez's motion for leave to amend. Sanchez requests leave to add new facts reflecting:

- Recently discovered information indicating SYHC employees had actual notice of acts of sexual misconduct by Dr. Fajerman prior to the allegations of misconduct that form the basis of Sanchez's negligent hiring, supervision, and retention claim;
- Recently obtained SYHC policy and procedure regarding provider sexual misconduct, which Sanchez argues is relevant to the first prong of the discretionary exception doctrine analysis; and
- Recently discovered information and intervening California case law supporting a direct negligence claim, which is a separate claim from Sanchez's claim for negligent supervision and retention.

(Doc. No. 19 at 5.)

In sum, based on these proposed facts, Sanchez requests leave to add: (1) new facts in support of Sanchez's negligent supervision and retention claim, (2) a direct negligence claim against the United States for failure to protect against foreseeable sexual abuse, and (3) a direct negligence claim against the United States for failure to protect against foreseeable criminal conduct. (*Id.* at 5–6.) After review of the proposed amendments, and finding no undue delay, bad faith, or dilatory motive, the Court finds it appropriate to **GRANT** Sanchez leave to amend her complaint. *See Knappenberger v. City of Phoenix*,

566 F.3d 936, 942 (9th Cir. 2009) ("Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.").

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the United States' motion to dismiss Sanchez's complaint. (Doc. No. 13.) Moreover, the Court also **GRANTS** Sanchez's motion for leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."). Sanchez will have **twenty-one (21) days** from the date of this Order to file her amended complaint addressing the deficiencies noted herein. Failure to file an amended complaint will result in dismissal of this case.

**IT IS SO ORDERED.**

Dated: March 10, 2020

Hon. Anthony J. Battaglia
United States District Judge